Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7021 | **DATE** | October 7, 2003 |
| **CASE TITLE** | *Davila v. USF Holland* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the attached Memorandum and Order, the motions direct at Dr. Martin Moore-Ede are granted in part and denied in part. Specifically, he may testify as to the Circadian Alertness Simulator. He may not testify as to a blood alcohol comparison, Davila's caffeine consumption, environmental factors, his "fatigue-impaired state"/stall theory, the credibility of other witnesses, and the statistical likelihood of an accident based on age. The motions directed at Steven Vaccaro are denied. The motions directed at David Sallmann are denied except that Sallman may not testify that regarding the condition of the brakes on Klatt's truck. The motions directed at Robert Seyfried are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **OCT 2 2 2003** date docketed | 99 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | 03 OCT -8 PM 1:42 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RTS | courtroom deputy's initials | FILED FOR DOCKETING | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

DOCKETED
OCT 2 2 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA DAVILA,<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | ) | 02 C 7021 |
| USF HOLLAND, INC., et al.,<br>Defendants. | )<br>)<br>)<br>) | |

## MEMORANDUM AND ORDER

This case arises out of a fatal collision between a truck and a Honda Civic in the early morning hours of August 24, 2002. Alberto Davila was driving the Civic, and Alejandro Flores and Enrique Mandujano were also in the car. Only Flores and the truck driver, Thomas Klatt, survived the crash. This diversity action by Davila and Mandujano's estates against Klatt and his employer, USF Holland, followed. The parties have filed motions in limine contending that various opposing experts (Dr. Martin Moore-Ede, Steven Vaccaro, David Sallman, and Robert Seyfried) should be barred from testifying at trial.

### Daubert

Under *Daubert*, scientific testimony is admissible only if: (1) the expert offering the testimony has "genuine expertise" or "scientific knowledge,"; and (2) the expertise will help the trier of fact understand or determine a fact in issue. *Daubert*, 509 U.S. at 592. In other words, to be admissible, the expert testimony must be both reliable and relevant. In determining whether expert testimony is grounded in reliable methodology, the following non-exclusive factors are helpful: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential



rates of error; and (4) whether the theory has been accepted in the relevant community. *Id.* at 593-94.

These criteria are flexible, and no single factor is dispositive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999). The *Daubert* inquiry is designed to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

### Dr. Martin Moore-Ede

The defendants retained Dr. Martin Moore-Ede to opine regarding the level of alertness of Davila and Klatt, the two drivers involved in the collision. According to Dr. Moore-Ede, Davila was very tired at the time of the collision and Klatt was wide awake and very alert. The defendants wish to offer seven theories supporting this opinion.

First, Dr. Moore-Ede points to a mathematical model called the Circadian Alertness Simulator ("CAS"). The CAS purportedly predicts when someone is at risk for falling asleep. The plaintiffs have withdrawn their objections to Dr. Moore-Ede's testimony regarding the CAS.

Second, Dr. Moore-Edes cites studies which compare sleepiness and the effects of alcohol and opines that Davila's fatigue impairment was equivalent to a blood alcohol content of .075, "just slightly below the legal .08 blood alcohol limit in most states." Davila had no alcoholic beverages on the night of the accident and did not drink alcohol at all. Regardless of the scientific reliability of the studies (an issue upon which the court will not comment), testimony based on the studies would not assist the jury in understanding the evidence. This is because Davila was not under the influence of alcohol on the night of the accident. Thus, any

-2-

testimony about blood alcohol would be highly prejudicial, misleading, and confusing. *See* Fed. R. Evid. 403.

Third, Dr. Moore-Edes opines that it was unlikely that Davila had a caffeinated beverage in the hours before the accident. Davila ate at Denny's restaurant shortly before his death. According to Dr. Moore-Edes, Davila likely consumed water, juice, or soda, which were likely not caffeinated because "most beverages are not caffeinated." This opinion is not only suspect (in the court's experience, a significant percentage of soda is caffeinated) but also completely speculative. Dr. Moore-Edes thus may not opine as to whether Davila drank a caffeinated beverage on the night of the crash.

Fourth, Dr. Moore-Edes opines that environmental factors such as sound, light, and temperature can affect a driver's fatigue levels. Dr. Moore-Edes testified that he did not know what the temperature in the car was, but that the temperature would not have helped keep Davila alert because "people set the temperature to a comfort level which would not add any extra stimuli that would increase alertness." Any opinion based on the temperature of Davila's car would clearly be speculative and hence, is barred.

Fifth, Dr. Moore-Edes asserts that a "fatigue-impaired state" could have caused Davila to stall his car. The stall theory is based on the testimony of Greg Howard, who was driving south on Route 41 when he saw something strange in the northbound lanes and then saw sparks generated by the accident. According to Dr. Moore-Edes, the "something strange" could well have been Davila's stalled car. This opinion is pure conjecture and is not based on any evidence in the record or any accepted scientific theory.

Sixth, Dr. Moore-Edes opines that Klatt's version of what happened on the night of the accident is more credible than Flores' and that Flores' testimony is confusing. These are both jury questions, so Dr. Moore-Edes cannot offer his opinions on these subjects. *See, e.g., Goodwin v. MTD Products*, 232 F.2d 600 (7th Cir. 2000).

Seventh, Dr. Moore-Edes opines that a teenage male driver is statistically more likely to be at fault in a car accident than a fifty-eight year old male truck driver. Statistical evidence about the general proclivities of older and younger drivers will not help the jury determine what happened on the night of the fatal crash. Accordingly, Dr. Moore-Edes may not testify regarding this theory.

### Steven J. Vaccaro

Vaccaro was disclosed as an expert on behalf of Davila's estate in its capacity as a third-party defendant. He has opined, among other things, that: (1) the Civic should have had a green light as it turned from eastbound Stearns School Road onto northbound Route 41; (2) Davila could not have avoided the crash; and (3) Klatt had more than sufficient time and distance to engage in a successful evasive maneuver and thus could have avoided the crash. The defendants stress that Vaccaro bases these opinions largely on his experience driving his car (a 1997 Dodge Caravan) through the intersection four times along the path that the Civic purportedly would have taken and assuming a "normal" acceleration rate.

With respect to the opinion that the Civic should have had a green light as it turned from eastbound Stearns School Road onto northbound Route 41, Vaccaro also relies on the testimony of Flores and an employee for Meade Electric (Michael Knutson), who testified about the operation of the traffic light at the intersection. The defendants contend that Vaccaro's

-4-

testimony as to the color of the light will not help the jury understand the testimony of Flores and Knutson (and others) regarding this issue. This line of argument does not affect whether Vaccaro's methodology is scientifically appropriate or whether the conclusions he drew, given his various factual assumptions, are correct. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 720-21 (7th Cir. 2000).

Vaccaro also opines that Davila could not have avoided the crash. This opinion is based on Vaccaro's analysis of the two travel paths Davila's Civic could have taken through the intersection, given a presumed "normal" acceleration rate. The defendants contend that this opinion is flawed because Vaccaro also conceded that Davila would have been able to see Klatt's truck before entering the intersection but did not consider whether Davila could have braked and thus avoided the accident. The court will not enter into the fray regarding what Davila could or could not have done. Suffice it to say that the defendants argument attacks the factual basis of Vaccaro's opinion, not the soundness of his methodology. *See id.*

Finally, Vaccaro opines that Klatt had more than sufficient time and distance to engage in a successful evasive maneuver and thus could have avoided the crash. This opinion is based on a "time-distance" study which addresses the point at which Klatt would have seen the Civic. A critical part of Vaccaro's study – the point at which Klatt could have seen the Civic – is based on Vaccaro's assumption that a vehicle crossing the southbound lanes should have been seen by an approaching driver when the crossing vehicle was in the center of the southbound lanes and Vaccaro's assumptions regarding the Civic's path and speed through the intersection. This assumption can be challenged on cross-examination and, again, does not go to the reliability of Vaccaro's methodology.

### David Sallmann

Sallmann was disclosed as an expert on behalf of Davila's estate. The defendants take issue with five of his opinions: (1) that Klatt had a red light at the intersection; (2) Klatt could have avoided the collision if he had applied emergency braking 100 feet before impact and was traveling at the 45 m.p.h. speed limit; (3) Klatt had enough time to avoid striking the Civic; (4) Klatt had more than six seconds to perceive and react to avoid hitting the Civic; and (5) The brakes on Klatt's truck were out of service.

According to the defendants, Sallman's opinion that Klatt had a red light is based on assumptions as to which vehicle reached the sensor loops on Route 41 which control the traffic lights. This objection does not go to whether Sallman's opinion is based on scientific methodology or procedures. The defendants may cross-examine Sallman as to the facts which form the foundation of his opinion.

The defendants also contend that Sallman's opinions about Klatt's ability to avoid hitting the Civic are flawed because they are based on the assumption that Klatt saw the Civic in enough time to react and simply failed to do so. According to the defendants, the key assumption made by Sallman is flawed because Sallman did not conduct a conspicuity analysis and did not consider the Civic's rear lighting. Thus, they conclude that Sallman's opinions are not supported by appropriate scientific methodology. Again, this objection goes to whether the finder of fact should accept Sallman's opinion, not to whether it is admissible in the first place.

The defendants also contend that Sallman should not be permitted to opine that the brakes on Klatt's truck were out of service. Specifically, Sallman stated that "[t]he brakes on the USF Holland truck were out of service per the North American Uniform Vehicle Out of Service

-6-

Criteria and the Federal Motor Carrier Safety Regulations." According to the defendants, since Klatt did not brake prior to the accident, his opinion about the condition of the brakes is irrelevant. It is undisputed that Klatt steered around the Civic in an attempt to avoid an accident and did not apply his brakes. The court thus agrees with the defendants that an opinion about the condition of the brakes would be confusing, irrelevant, and unfairly prejudicial.

## Robert Seyfried

Seyfried was disclosed as an expert on behalf of Mandujano's estate. He is the director of the Transportation Safety Division at the Center for Public Safety at Northwestern University and his area of expertise is the timing and operation of traffic lights at the intersection where the accident occurred. He opined that Klatt ran a red light based on Seyfried's experience driving his car (a 1991 Ford Escort) through the intersection in a "normal" left turn with one hand while he timed himself with a stopwatch in his other hand.

The defendants assert that there is no way to test Seyfried's model or subject it to peer review. They also contend that the "drive your own car through an intersection at a 'normal' speed" method of accident reconstruction has not been accepted in the relevant scientific community. The Supreme Court, however, has emphasized that when an expert purports to base his testimony on professional expertise and personal experience, the expert must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

It appears that Seyfried's accident reconstruction methodology is based on his extensive practical experience in this area given that he is an expert in the timing and operation of traffic lights. Moreover, the defendants' objections center around the facts that underlie Seyfried's

opinion. They do not establish that Seyfried lacks practical experience performing his analysis or that his reconstruction methodology is not accepted in the accident analysis scientific community. *See Smith v. Ford Motor Co.*, 215 F.3d at 720-21. Accordingly, Seyfried's opinions are admissible under *Daubert*.

### Conclusion

For the above reasons, the motions directed at Dr. Martin Moore-Ede are granted in part and denied in part. Specifically, he may testify as to the Circadian Alertness Simulator. He may not testify as to a blood alcohol comparison, Davila's caffeine consumption, environmental factors, his "fatigue-impaired state"/stall theory, the credibility of other witnesses, and the statistical likelihood of an accident based on age. The motions directed at Steven Vaccaro are denied. The motions directed at David Sallmann are denied except that Sallman may not testify regarding the condition of the brakes on Klatt's truck. The motions directed at Robert Seyfried are denied.

DATE: 10-7-03

Blanche M. Manning
United States District Judge

02cv7021.mil